```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
                                       :
NELLSON NORTHERN OPERATING, INC.,      :
     Plaintiff,                        :
                                       :
     v.                                :     No. 2:02-cv-0304
                                       :
ELAN NUTRITION, LLC and                :
ELAN NUTRITION, INC.,                  :
     Defendants.                       :
```

**MEMORANDUM AND ORDER**

Before the Court is a Motion by Defendants Elan Nutrition, LLC and Elan Nutrition, Inc. ("Elan") seeking leave to disclose the Plaintiff's confidential information to Elan's expert, Ann Grev. Plaintiff Nellson Northern Operating, Inc. ("Nellson") opposes the disclosure on the grounds that its proprietary information could reach its competitors through Grev. For the reasons set forth below, Elan's Motion for Leave to Disclose Confidential Information (Doc. 87) is GRANTED.

**I.   BACKGROUND**

Both Elan and Nellson manufacture nutrition bars. Nellson is the holder of U.S. Patent No. 6,299,929 (the "'929 Patent") and U.S. Patent No. 6,749,886 B2 (the "'886 Patent"). In this suit, Nellson alleges that Elan has infringed both patents in violation of the patent laws of the United States, particularly 35 U.S.C. §§ 271 and 281. Elan denies infringing the patents, and further asserts that the patents are invalid in view of prior

art predating the filing of applications for these patents and in view of "basic deficiencies" in the patents and in the way that the patents were "filed, prosecuted, and/or examined in the U.S. Patent Office."  (First Am. Answer to Compl. ¶ 30 (Doc. 62).)

On September 3, 2003, the Court (Murtha, J.) entered a Protective Order and Stipulation of Confidentiality.  It states that the parties shall designate information subject to discovery as "confidential" or "confidential-attorneys' eyes only."  Information so designated is subject to a number of restrictions.  With respect to disclosures to experts, paragraphs 5 and 7 state that information designated as "confidential" or "confidential-attorneys' eyes only" may be disclosed to "any person not affiliated with a Party who is specifically retained by an attorney . . . to assist in the preparation of this action for trial as a consultant or testimonial expert."  This disclosure is subject to several limitations.  First, disclosure can be made "only to the extent reasonably necessary for purposes of this action."  Second, the expert must agree to be bound by the terms of the Protective Order, and must sign an Acknowledgment to that effect.  Finally, paragraph 8 of the order establishes that before disclosing any protected information, the receiving party must notify the producing party of its intent.  The producing party then has five business days to object to the disclosure.  If an objection is made, the information shall not

be disclosed until the issue is resolved, either by agreement between the parties or by court order.

Elan shared Nellson's confidential information with a technical expert, Dr. Wayne Moore, Ph.D., with Nellson's acquiescence. Dr. Moore submitted expert reports in this case on January 19, 2004, and August 29, 2006. On July 7, 2006, Elan advised Nellson of its intention to share the information with a second technical expert, Ms. Ann Grev. Nellson informed Elan that it was objecting to disclosure of confidential information to Grev, based on her past work for The Solae Company ("Solae"), a supplier to competitors of Nellson, and her current work for Cargill, Inc. ("Cargill") another protein supplier. Grev completed an expert report based on Nellson's patent applications, without the benefit of any confidential information, on August 24, 2006.

Nellson retained Dr. Gregory Ziegler as an expert. Dr. Ziegler completed a report on August 28, 2006, which is designated as "confidential-attorneys' eyes only."

On September 8, 2006, Elan filed the present Motion seeking the Court's permission to disclose Nellson's confidential information to Grev. The Court held a hearing on the Motion on October 18, 2006. During that hearing, Elan's counsel agreed to limit the scope of its disclosures to Grev, requesting that she have access merely to the report of Nellson's expert witness Dr.

Gregory Ziegler and accompanying exhibits, and to Dr. Ziegler's report responding to Grev's report.  The Court ruled that Nellson could depose Grev regarding her current professional activities in order to determine whether or not those activities would be likely to lead to her deliberate or inadvertent disclosure of Nellson's confidential information.  The deposition was held on November 2, 2006.  The parties subsequently filed supplemental memoranda on this issue.

**A.   Grev's Background**

Grev worked for Solae and its predecessor companies from 1974 until 2005.  Solae manufactures soy products which it supplies to other companies for use in food products.  (Grev Dep. 9:14-17, Nov. 2, 2006 (Doc. 126 Ex. A).)  Grev's work there was primarily on the Ralston Purina protein PP-860, which the company developed for use in food bars.[1]  This same protein is identified in the patents in suit as a suitable "filler protein" and "binder protein," for use in food bars.  At Solae, Grev was initially responsible for soy protein testing and processing.  Later, she assumed responsibility for establishing standardized policies within protein technologies and manufacturing standards.  Finally, she worked as a Project Manager on developing products, primarily for use in dry blended beverages.  (Grev Resume (Doc. 88 Ex. E).)

---

[1]The Solae Company was formerly Ralston Purina.

Grev states that her primary occupation now is as a stay-at-home parent. However, she has done some consulting work since leaving Solae, primarily for Cargill. In the fall of 2005, she consulted with Cargill regarding a series of soy protein isolates known as "Prolisse." (Grev Dep. 26:11-19.) Cargill's promotional materials state that Prolisse is used in protein bars (Sturgill Decl. & Exs. (Doc. 125).) and Cargill has offered its protein Prolisse to Nellson for use in nutritional bars. (Sturgill Decl. ¶ 4.)

Grev's specific consulting work for Cargill regarded its process for making the Prolisse proteins and how it could create proteins to meet customer specifications. (Id. 60:13-73:3.) She also gave her opinion regarding product consistency of the Prolisse proteins based on data provided to her. (Id. 86:1-87:14.) Finally, she did some work on lecithination, a process performed on proteins used in protein beverages, evaluating the protein's dispersability for beverage mixes meant to be mixed with water. (Id. 92:14-93-16.) Grev has not consulted with Cargill on any other topics, and was unaware that Cargill had any involvement with food bars while she was consulting for Cargill. (Id. 98:4-22; 140:19-22.) She does not currently have any assignments or responsibilities regarding consulting work for Cargill, but she does expect to consult with them in the future regarding productivity and "manufacturing on stream time,"

matters consistent with the type of work she has done for Cargill in the past.  (Id. 140:19-141:12.)

Grev does have "proprietary knowledge of Solae's processing that are covered by trade secrets."  She did not ever sign an agreement with Solae promising not to disclose their trade secrets, but does not rely on Solae's proprietary information in her work for Cargill. (Id. 48:9-49:11.)  She discussed in her deposition testimony how she would distinguish between proprietary and non-proprietary information, stating that "if it's a concept known within the industry, I would consider it not proprietary.  Specifics or a concept that was developed within Solae, I would consider proprietary."  (Id. 51:11-52:14.)

Grev has signed an Acknowledgment form agreeing to abide by the Protective Order.

## II.  DISCUSSION

To resolve a dispute over disclosure of confidential information to experts, courts "balance the movant's interest in selecting the consultant most beneficial to the case, considering the specific expertise of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors."  BASF Corp. v. United States, 321 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2004); accord Rice v. United States, 39 Fed. Cl. 747, 750 (Fed. Claims

1997) (court must "balance the need of one litigant to access proprietary information in order to present his case, and the potential that irreparable harm may be suffered by the disclosing party.")

Here, Elan has a strong interest in allowing Grev access to Dr. Zeigler's reports and attachments to those reports.  The properties of proteins, such as water absorption and emulsification, and proper testing techniques to determine the properties of a particular protein, are at issue in evaluating the viability of the patents in suit.  Grev has spent her career working with proteins such as those at issue in this case, and has experience with soy protein testing.  In addition, at Solae she did substantial work on a specific protein which is actually identified in the patents in suit as suitable for use in food bars.  Her experience is therefore of unique relevance to this case.

While it is true that Elan has already shared information with its expert Dr. Moore, Elan need not be limited to a single expert witness.  Although Nellson suggests that Elan could find an expert who does not currently work in the food industry through a university food science program, Elan should not be so severely limited in its choice of experts.  Expert testimony will be essential to understanding the parties' claims in this case and Elan must have latitude to choose the experts that it

believes have the necessary expertise and ability to convey highly technical information to the Court.  See <u>Advanced Semiconductor Materials Am. Inc. (ASMA) v. Applied Materials Inc.</u>, 43 U.S.P.Q.2d (BNA) 1381, 1384 (N.D. Cal. 1996).  To be effective, these experts must have at least the minimal access to information designated as "confidential" or "confidential-attorneys' eyes only" that Elan requests here.  Grev must be able to review Nellson's expert's reports and their attachments in order to respond adequately to those reports and prepare her testimony.

Nellson does have an interest in protecting its information from disclosure to its competitors.  However, the risk that its information will be disclosed is not great.  Grev has signed an Acknowledgment agreeing to abide and be bound by the obligations and conditions of the Protective Order, and consenting to the Court's jurisdiction for any proceeding to enforce its terms.  The Court does not have reason to doubt the integrity with which she undertakes to keep Nellson's information confidential.[2]

---

[2] Nellson has suggested that Grev is untrustworthy based on a Declaration that she signed on October 10, 2006, submitted to the Court by Elan.  In that Declaration, Grev stated that "to the best of my knowledge, Cargill has not supplied proteins for use in food bars.  The Solae Company, and to the best of my knowledge, Cargill, do not make food bars."  In her deposition testimony Grev stated that since submitting the declaration she had gotten the impression that Cargill does supply proteins for use in foods bars. (Grev. Dep. 98:4-101:16.)  She additionally testified that her intent in making that statement was to express her understanding that neither Cargill or Solae had food bars in

Nellson argues that even if Grev genuinely intends to abide by the conditions of the Protective Order, she will be unable to avoid using knowledge that she gains from her review of its confidential information in her work.  This argument does have some persuasive force.  See BASF Corp., 321 F. Supp. 2d at 1380 (citing A. Hirsh, Inc. v. United States, 657 F.Supp. 1297 (Ct. Int'l Trade 1987)).  Under the circumstances at issue here, however, the risk of such inadvertent disclosures is at least limited.  Grev is primarily a stay-at-home parent at this time, and her consulting work with Cargill has been and will likely continue to be relatively limited.  She also has experience segregating her former employer's proprietary information and explained clearly during her deposition how she determines which information she will or will not use in her current consulting. Her current conduct with regard to Solae's information suggests that she will make every effort to similarly protect information that she views during her participation in this case.

Finally, Elan has limited the scope of its request.  It now only requests that Grev have access to Dr. Ziegler's reports and their attachments.  Grev will not be given broad or unfettered

---

commercial sale.  However, Solae does make bars "within research."  She was unaware when making the declaration of Cargill doing any research on bars.  (Id. 120:15-23.)  The Court credits Grev's testimony that her Declaration to the Court reflected the best of her knowledge at the time that it was signed and does not believe that she made representations in bad faith.

access to Nellson's files.  Rather, she will view only this closed set of materials, limiting her exposure to Nellson's confidential information and greatly reducing the likelihood of an inadvertent disclosure.

### III.  CONCLUSION

After balancing Elan's interest in sharing information with Grev against Nellson's interest in protecting its confidential information, the Court finds that Elan's strong interest in selecting the expert of its choice outweighs Nellson's interest in nondisclosure.  Therefore, Elan may share Dr. Zeigler's reports and their attachments with Grev in order to allow her to effectively serve as an expert witness.  For the foregoing reasons, the Motion for Leave to Disclose Confidential Information is GRANTED.


Dated at Burlington, Vermont this 1st day of December, 2006.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge