IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| NELLSON NORTHERN OPERATING, INC. and NELLSON NUTRACEUTICAL, INC., <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> ELAN NUTRITION, LLC, Defendant, and ELAN NUTRITION, INC., <br><br> Defendant/Counterclaim Plaintiff. | Case No. 2:02-cv-0304 WKS <br><br> Hon. William K. Sessions, III <br> Chief Judge |

### ELAN NUTRITION, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER

Elan Nutrition, Inc. ("Elan"), by counsel, respectfully submits this Opposition to Plaintiffs Nellson Northern Operating, Inc. ("NNO") and Nellson Nutraceutical, Inc.'s ("NNI") Motion to Reconsider with Incorporated Memorandum ("Motion to Reconsider"). Plaintiffs' Motion to Reconsider should be denied for the reasons set forth below.

**I.    STANDARD FOR RECONSIDERATION**

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.*; *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (cautioning that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason [be] permitted, to battle for it again"). Motions for reconsideration are not vehicles for "taking a 'second bite at the apple.'" *Sequa*

*Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998). "Nor should a reconsideration be granted because the motion presents a new set of arguments purporting to show why a suit should not be dismissed." *Wilkinson v. G.S. Precision, Inc.,* 2007 WL 2220474 (D. Vt. July 31, 2007).

## II. PLAINTIFFS' MOTION TO RECONSIDER FAILS TO MEET THE STANDARD FOR RECONSIDERATION

Plaintiffs argue that this Court should reconsider its December 19, 2008, Order dismissing NNI from this lawsuit. However, the Motion to Reconsider is nothing but a "second bite at the apple" and an attempt to relitigate an issue that has been correctly decided. Plaintiffs' Motion to Reconsider cites no new controlling decisions nor data that the Court overlooked that could reasonably be expected to alter the conclusion reached by the Court. *Latouche v. North Country Union High School District,* 131 F. Supp. 2d 568, 569 (D. Vt. 2001) (denying motion for reconsideration that cited "no new controlling decisions nor data that the Court overlooked that could reasonably be expected to alter the conclusion reached by the Court"). Rather, the Motion to Reconsider merely sets forth a new set of arguments purporting to show why NNI should not be dismissed from this lawsuit. Under Second Circuit law, Plaintiffs' Motion to Reconsider should be dismissed because it simply seeks to relitigate the dismissal of NNI. However, Elan will address the new arguments and Plaintiffs' attempt to relitigate issues below.

## III. NNI WAS PROPERLY DISMISSED FROM THIS LAWSUIT

In its December 19, 2008, Opinion and Order ("Opinion"), this Court dismissed NNI's claims against Elan. The Court issued a 25-page Opinion that articulated all of the relevant law and the relationship between NNI and the patents-in-suit. The Court analyzed the history of the relevant parties, as well as a history of the patents-in-suit and their chains of title. The Court devoted approximately two pages of the Opinion (pp. 3-5) to setting forth the chain of title and addressing the assignment of the patents-in-suit to Nellson Nutraceutical, LLC ("NNL"), the

October 3, 2007, Patent Litigation Agreement, and the February 22, 2008, Acknowledgement and Reversion of Patent Rights ("Acknowledgement").

Plaintiffs' Motion to Reconsider asserts that: 1) NNI's standing should be determined as of the date the Motion to Amend was filed; 2) the Court misapplied *Enzo APA & Son, Inc. v. Geapag A.G.,* 134 F.3d 1090 (Fed. Cir. 1998); and 3) NNI has standing today as a result of the Acknowledgement. All three of these issues were addressed in this Court's December 19, 2008, Order. This Court determined that NNI's standing should be determined from the date it joined the lawsuit, January 8, 2008. (*See* Opinion, p. 21). Plaintiffs seek to relitigate this issue by attempting to retroactively rewrite the Motion for Leave to File Second Amended Complaint and Incorporated Memorandum of Law ("Motion for Leave") (Dkt. 134), as discussed below. The Court also applied *Enzo* correctly to NNI's purported interest in the patents-in-suit. Plaintiffs incorrectly seek to relitigate the application of *Enzo,* as discussed below. Lastly, the Court addressed the Acknowledgement in detail on pages 5 and 21 and determined that it did not give standing to NNI. The current Motion to Reconsider simply attempts to relitigate that issue by misrepresenting the Acknowledgement, as discussed below.

### A. **BACKGROUND**

On December 22, 2006, Plaintiff NNO filed its Motion for Leave. This Motion for Leave was filed pursuant to "Fed. R. Civ. P. 15(a) and 21 and Local Rule 15.1." (*See* Dkt. 134, p. 1). NNO attached a "proposed Second Amended Complaint" as Exhibit 1 to the Motion for Leave and a redlined version as Exhibit 2. Substantively, the Motion for Leave sought permission from the Court to file a Second Amended Complaint that added NNI as a Plaintiff. Elan opposed the Motion for Leave, arguing, among other things, that NNI was not the exclusive licensee to any of the patents-in-suit. (Dkts. 136 and 148).

On September 21, 2007, the Court scheduled a hearing for October 12, 2007, to hear the Motion for Leave along with several discovery motions. (Dkt. 184). On October 3, 2007, Plaintiffs' counsel filed a Stipulated Motion to Continue Hearing Date and Current Discovery and Motion Deadlines "until a date after October 29, 2007" (Dkt. 185). Plaintiffs' counsel requested the postponement because, among other reasons, "postponing the hearing would allow additional time to resolve important issues raised by the bankruptcy action involving the Nellson Group of companies before further proceedings are conducted in this case." The hearing was then rescheduled for November 15, 2007, and after another Stipulated Motion, was again rescheduled for December 13, 2007. At that hearing, the Court granted the Motion for Leave.

Elan filed its Third Amended Answer to Second Amended Complaint, Affirmative Defenses, and Counterclaims on December 27, 2007. (Dkt. 197). The next day, the Court removed that pleading as "premature." (Dkt. 198). Plaintiffs filed the Second Amended Complaint on January 4, 2008 (Dkt. 199). That Second Amended Complaint was removed by the Court on the same day. (Dkt. 200). Plaintiffs filed the Second Amended Complaint again on January 8, 2008. (Dkt. 201). Elan then filed its responsive pleading on January 17, 2008. (Dkt. 204). Elan also filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. 205), concerning Plaintiffs' lack of standing on the same day.

**B.   NNI'S STANDING SHOULD BE DETERMINED AT THE TIME PLAINTIFFS FILED THE SECOND AMENDED COMPLAINT**

As noted above, Plaintiffs' Motion for Leave was filed pursuant to "Fed. R. Civ. P. 15(a) and 21." Under Rule 15, the addition of another plaintiff to an action is not one of the articulated reasons set forth in Rule 15(c) for the relation back of amendments. However, Plaintiffs argue that since the addition of NNI as a co-Plaintiff relates to the same transaction and occurrences in the original Complaint, the Second Amended Complaint relates back to the filing date of NNO's

4

First Amended Complaint in 2005. (*See* Motion to Reconsider, p. 4, n.2). However, this "interpretation" of Rule 15 contradicts the express language of Rule 15(c)(1)(B), which states "the amendment asserts a **claim or defense** that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." (Emphasis added). Rule 15(c)(1)(C) allows relation back of amendments if "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied…." Rule 15(c)(1) simply does not allow the relation back to the original complaint when an additional **plaintiff** is added into the lawsuit, late in the game, in an attempt to increase a potential damage award.

In addition, Rule 21 does not have a relation back provision. Perhaps recognizing this, Plaintiffs have relied upon some case law concerning motions to intervene in class actions. (*See* Motion to Reconsider, p. 4). Case law concerning motions to intervene under Rule 24 is completely irrelevant.[1] As noted above, Plaintiffs' Motion for Leave was filed under Rules 15 and 21, not Rule 24, which has different requirements for being granted.

Once NNO's Motion for Leave was granted, NNO and NNI had to actually take the step of filing that amended pleading, as set forth above. NNO and NNI did not file that amended pleading until January 8, 2008. The Court appropriately recognized, at page 21 of its Opinion, that NNI entered this lawsuit on January 8, 2008, when it joined NNO's Second Amended Complaint as a co-Plaintiff. That is precisely the date that NNI's standing should be addressed.

"Relation back" is intimately connected with the policy of the statute of limitations. (*See* ADVISORY COMMITTEE NOTES TO THE 1966 AMENDMENT TO RULE 15.) Thus, the relation back

---

[1] *Comer v. Cisneros,* 37 F.3d 775, 801 (2d Cir. 1994) is also inapplicable because it was a civil rights class action where the Court allowed the class certification to relate back because public housing claims were "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Id.* at 799.

5

argument is really irrelevant to determining a standing issue concerning NNI. Standing is determined at the time a suit is filed. *Lynch v. Leis,* 382 F.3d 642, 647 (6th Cir. 2004); *Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1309 (Fed. Cir. 2003). The operative complaint for determining standing is the one that adds the plaintiff to the action. *Lynch,* 382 F.3d at 647.

In *Lynch*, the action was initiated on April 7, 2005, with Jeff Lynch as the initial plaintiff. Mike Powers was added to the suit on May 25, 2005, in the Second Amended Complaint. The Sixth Circuit addressed the issue of when standing should be determined. The Sixth Circuit determined that the Second Amended Complaint, adding Powers to the action was the operative complaint, and thus, the operative date for standing was May 25, 2005. Similarly here, the operative pleading concerning the standing issue for NNI would be the January 8, 2008, Second Amended Complaint, which adds NNI as a Plaintiff, not the original Amended Complaint, nor the Motion for Leave. Thus, NNI's standing must be addressed with respect to January 8, 2008, as was done by this Court in its December 19, 2008, Opinion.

### C. THE *ENZO* RULE IS APPLICABLE TO NNI

The Plaintiffs argue that *Enzo* is inapposite to NNI's standing and that this Court overlooked *Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206 (Fed. Cir. 1998).[2] However, both *Enzo* and *Mas-Hamilton* hold that *nunc pro tunc* assignments cannot cure standing for a party that does not own legal title or have exclusionary rights in a patent at the time it files suit. *Enzo,* 134 F.3d at 1093; *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.,* 93 F.3d 774, 777-80 (Fed. Cir. 1996); *Paradise Creations,* 315 F.3d at 1309-10 (applying *Enzo*); *Mas-Hamilton,* 156 F.3d at 1211. This Court determined that when the Second Amended

---

[2] In *Mas-Hamilton,* unlike the present case with NNI, "standing was not deficient at the time the suit was filed." *Id.* at 1211. *Mas-Hamilton* is simply not contrary to the holding of *Enzo*. *See Messagephone, Inc. v. SVI Systems, Inc.,* 243 F.3d 556, 2000 WL 1141046, \*\*5 (Fed. Cir. Aug. 11, 2000) (holding that *Mas-Hamilton* is consistent with *Enzo*). This Court did not overlook a controlling decision that could be reasonably expected to alter the conclusion reached by the Court.

6

Complaint was filed on January 8, 2008, NNI did not own or have any exclusionary rights in the patents-in-suit, since it had conveyed all those alleged rights to NNL in the October 3, 2007, assignment. The Court also determined that NNI was in the same position as the licensee in *Enzo,* in that NNI did not hold exclusionary rights in the patents-in-suit at the time it filed suit and could not acquire standing through the later executed Acknowledgement. (*See* Opinion, pp. 20-21). The reality is that Plaintiffs' challenge to the application of *Enzo* is based upon their incorrect position that NNI had standing at the time it filed its Motion for Leave. As articulated above, the date for determining if NNI had standing is January 8, 2008. It is undisputed that NNI had given up its alleged rights in the patents-in-suit prior to January 8, 2008. Plaintiffs' argument that the Acknowledgement gave standing back to NNI is misplaced because NNI lacked standing on January 8, 2008, and the Acknowledgement did not give anything to NNI, as discussed below.

Plaintiffs' also argue that *Mas-Hamilton*[3] supports a position that standing for NNI can be corrected at any time, since NNO had standing. (Motion to Reconsider, p. 6). However, *Mas-Hamilton* does not support this foot-in-the-door proposition. *Wacoh Co. v. Chrysler, LLC,* 2009 WL 36666, *9 (W.D. Wis. Jan. 7, 2009). In *Wacoh,* the plaintiff argued that it had standing to bring the infringement suit for past and future damages because it was the sole owner of the patent at the time the suit was filed. The plaintiff *Wacoh* argued that its subsequent receipt and

---

[3] Plaintiffs also suggest that *Gipson v. Mattox,* 511 F. Supp. 2d 1182 (S.D. Ala. 2007) supports a position that as long as constitutional standing was present for one party at the time the lawsuit was filed, a temporary defect in another party's standing may be cured during the pendency of the litigation. (Motion to Reconsider, p. 6). However, the Court there found *Enzo* inapplicable since "the Complaint **always included both** Gipson and ChemTech as plaintiffs." *Id.* at 1191 (emphasis added). In addition, the Court allowed Gipson and ChemTech to correct, after the lawsuit was initiated, an "apparent drafting error" in an assignment that existed prior to the lawsuit. The Court noted that it was clear from the evidence that Gipson and ChemTech "had always intended the assignment to encompass all of Gipson's rights in the [patent-in-suit]." *Id.* The Court also noted that "[w]hatever rights ChemTech did or did not have, Gipson . . . unquestionably had [at the time the Complaint was filed]." *Id.* In contrast, NNI was not a party to the Amended Complaint that brought NNO into the lawsuit. Rather, NNI joined this lawsuit in a Second Amended Complaint, after it had unequivocally given up all of its alleged rights in the patents-in-suit. Moreover, NNO did not have the alleged rights NNI now claims when NNO was the only party to the suit.

invocation of a *nunc pro tunc* assignment did nothing more than clarify the scope of the ownership to include the right to sue for past infringement. The Court said that a "closer look at the applicable law relating to standing reveals that *Wacoh's* argument is simply lawyerly prestidigitation." *Id.* at *9.

The Court rejected the plaintiff's suggestion that, because it had standing to sue on claims for future infringement when the suit was filed, its foot was in the door regarding standing on past infringement claims so it could fix the assignment problem later under *Mas-Hamilton*. The Court noted that "[a] plaintiff must demonstrate standing for each claim he seeks to press." *Id.* (citations omitted). The Court then determined that standing to assert past infringement claims must be addressed independently of its standing to assert future infringement claims and the plaintiff cannot use a *nunc pro tunc* assignment to repair its deficiencies in standing. *Id.* Similarly here, Plaintiffs' argument that it can correct standing for NNI based upon a *nunc pro tunc* assignment, simply because NNO had standing is a misapplication of *Mas-Hamilton* and inconsistent with *Enzo*. NNI must demonstrate standing for each claim it seeks to press at the date it joined the lawsuit, January 8, 2008. *Lynch,* 382 F.3d at 647. NNI did not have standing on that date, and the *nunc pro tunc* assignment in this case (the Acknowledgement) cannot cure that problem.

      D.      **NNI D**OES **N**OT **H**AVE **S**TANDING TO **J**OIN THE **A**CTION **T**ODAY

Plaintiffs acknowledge in footnote 4 on page 7 of their Motion to Reconsider that this Court has not yet addressed Elan's contentions that NNI is not and has never been an exclusive licensee to the patents-in-suit. The Court did not need to address this issue because NNI does not have standing to participate in this suit. It is undisputed that on October 3, 2007, NNI assigned its alleged rights to the patents-in-suit to NNL. Therefore, NNI did not have standing on

January 8, 2008, and no further discussion should be necessary because any *nunc pro tunc* assignment after that date cannot cure the standing defect.

Nevertheless, Plaintiffs argue that NNI could join the lawsuit today as a result of the Acknowledgement. This position, while irrelevant, is contrary to the Acknowledgement. There are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits: 1) those that can sue under their own name alone; 2) those that can sue as long as the patent owner is joined in the suit; and 3) those that cannot even participate as a party to an infringement suit. *Morrow v. Microsoft Corp.,* 499 F.3d 1332, 1339 (Fed. Cir. 2007). There is no dispute that NNI is not in the first category of plaintiffs because it does not hold "all legal rights to the patent as the patentee or assignee of all patent rights." *Id.* The second category of plaintiffs holds exclusionary rights and interests created by the patent statutes, but not all substantial rights. These parties that hold exclusionary rights are often identified as exclusive licensees because the grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention. *Id.* at 1340. The third category of plaintiffs includes those that hold less than all substantial rights to the patent and lack exclusionary rights under the patent statutes. *Id.* These include non-exclusive licensees. *Id.* at 1341 (citations omitted).

NNI's current argument is that the Acknowledgement gave it back an exclusive license so that it can join the suit as a second category plaintiff. However, a careful review of the Acknowledgement, as was done by this Court, shows that NNI did not acquire any rights from the Acknowledgement.

This Court quoted the applicable portion of the Acknowledgement at page 5 of its December 19, 2008, Opinion. The Acknowledgement was between NNL and NNO. NNI is not a party to the Acknowledgement. The relevant language states:

> [NNL] hereby conveys and assigns to NNO, on behalf of itself and its *de facto* exclusive licensee NNI, the entire right to sue and recover damages and profits for all accrued causes of action for infringement of the Patents-In-Suit in the United States prior to the closing date of the APA.

Thus, the Acknowledgement did not assign anything back to NNI. Indeed, NNI's alleged exclusive license was assigned back to NNO, not NNI. The express terms of the Acknowledgement are fatal to NNI's current contention that it has standing today to join the lawsuit.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Reconsider should be denied.

                                          Respectfully submitted,

                                          ELAN NUTRITION, INC.

Dated: January 22, 2009        By:   /s/ Matthew J. Gipson
                                                Steven L. Underwood
                                                Matthew J. Gipson
                                                PRICE, HENEVELD, COOPER, DEWITT & LITTON, LLP
                                                695 Kenmoor SE
                                                P.O. Box 2567
                                                Grand Rapids, Michigan 49501-2567
                                                Tel: 616.949.9610 │ Fax: 616.957.8196
                                                sunderwood@priceheneveld.com
                                                mgipson@priceheneveld.com

                                                Thomas Z. Carlson
                                                Alison J. Bell
                                                LANGROCK SPERRY & WOOL, LLP
                                                210 College Street, P.O. Box 721
                                                Burlington, VT 05402-0721
                                                Tel: 802.864.0217 │ Fax: 802.864.0137
                                                tcarlson@langrock.com
                                                abell@langrock.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| NELLSON NORTHERN OPERATING, INC. and NELLSON NUTRACEUTICAL, INC., <br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>ELAN NUTRITION, LLC, Defendant, and ELAN NUTRITION, INC.,<br><br>Defendant/Counterclaim Plaintiff. | Case No. 2:02-cv-0304 WKS<br><br>Hon. William K. Sessions, III<br>Chief Judge |

## **CERTIFICATE OF SERVICE**

I, Matthew J. Gipson, certify that on January 22, 2009, I electronically filed with the Clerk of the Court **ELAN NUTRITION, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER** using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

> Andrew D. Manitsky
> Megan J. Shafritz
> John M. Delehanty
> Timur E. Slonim

Dated: January 22, 2009     By:     /s/ Matthew J. Gipson
                                    Steven L. Underwood
                                    Matthew J. Gipson
                                    PRICE, HENEVELD, COOPER, DEWITT & LITTON, LLP
                                    695 Kenmoor SE
                                    P.O. Box 2567
                                    Grand Rapids, Michigan 49501-2567
                                    Tel: 616.949.9610
                                    Fax: 616.957.8196
                                    sunderwood@priceheneveld.com
                                    mgipson@priceheneveld.com

11