UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | |
|---|---|
| NELLSON NORTHERN OPERATING, INC. ) <br> and NELLSON NUTRACEUTICAL, INC., ) <br> ) <br>         Plaintiffs ) <br> ) <br>     v. ) <br> ) <br> ELAN NUTRITION, LLC, ) <br> and ELAN NUTRITION, INC., ) <br> ) <br>         Defendants ) | Case No. 2:02-cv-0304 WKS <br><br> Hon. William K. Sessions, III <br> Chief Judge <br><br> **ORAL ARGUMENT <br> REQUESTED** |

PLAINTIFFS' REPLY MEMORANDUM IN
FURTHER SUPPORT OF MOTION TO RECONSIDER

Plaintiffs Nellson Northern Operating, Inc. ("NNO") and Nellson Nutraceutical, Inc. ("NNI") (collectively referred to as "Nellson"), by and through their attorneys, Gravel and Shea and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., hereby submit their Reply Memorandum in further support of their Motion to Reconsider the decision to dismiss NNI.

Preliminary Statement

Sometimes it is helpful to state the obvious. For what is really at issue in the parties' dispute over standing and *nunc pro tunc* assignments is whether Elan will face the prospect of paying lost profits to Nellson for its patent infringement. Without the presence of a plaintiff manufacturer of the high protein bars – whether the patent owner or the exclusive licensee or the assignee of such rights – Elan may avoid paying Nellson's lost profits; instead, it may only be required to pay a default "reasonable royalty" pursuant to 35 U.S.C. § 284. A reasonable royalty

here would represent a significantly smaller recovery to Nellson than its lost profits. That is why Elan is seeking to keep NNI out of the case.

But Nellson's issues here are easily remedied. The lost profits damages should be recoverable in this case regardless of whether NNO or NNI present them  One way to short circuit this issue is for Elan to accept the inevitable conclusion flowing through the argument at pages 9-10 of its Opposition Brief that the rights to recover lost profits reverted not to NNI, but to NNO. Since NNO is already in the case, this should enable NNO to recover NNI's lost profits and make the issue of NNI's standing moot. Alternatively, NNI, as a party having standing today, should be allowed to simply refile the complaint as a plaintiff (together with clarifying assignment/acknowledgment documentation, if necessary).

## ARGUMENT

In their opening brief, plaintiffs argued that the effective date for evaluating NNI's standing should be the date of filing of the motion for leave to amend, and that the cases permitting *nunc pro tunc* assignments to correct deficiencies in prudential standing of one party where another plaintiff had constitutional standing to give the Court subject matter jurisdiction governed NNI's situation. Even if NNI did not have standing at the time it filed the Second Amended Complaint, plaintiffs also argued that NNI could simply refile today, as its standing had been confirmed in the Acknowledgment almost a year ago. In response to that argument, Elan does not (and cannot) dispute the legal principle that, if NNI lacked standing when it filed the Second Amended Complaint but regained it thereafter, it could simply refile today. Indeed, the recent case on which Elan relies confirms this. *See Wacoh Co. v. Chrysler, LLC*, 2009 WL 36666, at *9 (W.D. Wis. Jan 7, 2009) ("In the event the district judge adopts this report and recommendation and dismisses Wacoh's claims, Wacoh may revive those claims simply by

filing a new lawsuit.");[1] *see also Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1191 (S.D. Ala. 2007) ("Given the near-certainty that ChemTech would wish to refile its litigation and given that the assignment has now been corrected …, equitable and prudential considerations would demand that the instant action be stayed until such time as ChemTech could file and serve a new lawsuit and that action could be consolidated with the instant case"). Thus, if NNI presently has standing, it is undisputed that it can simply refile in this case or file a new case and ask it to be consolidated with this one.

But Elan is not prepared to concede this point entirely. It argues that NNI did not regain standing by virtue of the Acknowledgment. That is, for the first time, Elan now argues that the Acknowledgement did not cause the rights to revert back to NNI, but gave them to NNO instead:

> "NNI's current argument is that the Acknowledgement gave it back an exclusive license….However, a careful review of the Acknowledgement, as was done by this Court, shows that NNI did not acquire any rights from the Acknowledgement ….[T]he Acknowledgement did not assign anything back to NNI. Indeed, NNI's exclusive license was assigned back to NNO, not NNI.

Elan Opp'n at 9-10.

If Elan's reading of the Acknowledgment is correct, then there should be no issue here. NNO is already a party in the case. So even under Elan's strict readings of *Mas-Hamilton* and *Gibson*, NNO can pursue the lost profits claims which have been assigned to it. As the Court noted, the "parties do not dispute that NNO had standing when it entered this lawsuit" and "NNO had standing to sue Elan at the time that it filed suit, so it

---

[1] In addition, Elan's reliance on *Wacoh* to distinguish *Mas-Hamilton* actually reaffirms the principles and relevance of *Mas-Hamilton* to this case. *Wacoh* was a one-plaintiff case where the single plaintiff had no standing to sue for past infringement at the outset and no case existed. In such a situation the *Enzo* principle is applicable since no *nunc pro tunc* assignment can revive a case that did not exist in the first place. In this case, NNO had standing to sue at the outset, providing the Court with subject matter jurisdiction. Therefore, any standing issues as to a second plaintiff NNI, in an already properly existing lawsuit, can be corrected in the same suit. *See Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998).

3

can regain its standing." Op. at 10, 12. If, consistent with the argument in its Opposition Brief that NNO is the current owner of the exclusive license rights, Elan agrees that NNO can therefore seek full recovery of Nellson's lost profits, the issue of whether NNI has standing to sue for lost profits may be moot. The Court can confirm that the rights to lost profits have fully vested with NNO.[2]

Finally, the court's dismissal of NNI was not with prejudice, so it may refile. *See, e.g.*, *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) (holding plaintiff "could cure its standing defect by executing a valid assignment and re-filing its complaint," because "lack of standing is not an issue that goes to the merits of the underlying patent issues, [thus] a dismissal of a complaint for lack of standing would not normally be expected to be made with prejudice"). Indeed, under *Wacoh*, discussed above, this is permissible from a standing perspective. *See Wacoh*, 2009 WL 36666, at *9; *see also Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 531 F. Supp. 2d 282, 289 (D. Conn. 2008) (dismissing claim for patent infringement for lack of standing without prejudice, despite having begun a trial on the merits, and noting that plaintiff "could cure the standing defect by obtaining a valid assignment of the rights to the patents-in-suit and then filing a new complaint"). And if the Court decides that NNI did not regain its rights by virtue of the Acknowledgement, then, in accordance with the provisions thereof, NNI can and will obtain the necessary further documentation to cure this

---

[2] If however, Elan is unwilling to make this concession, then its argument is clearly a hollow one. The rights of NNI as an exclusive licensee did not revert to NNO, but reverted to their original owner, NNI. The Acknowledgment restored the pre-bankruptcy sale status quo where NNO was the patent owner and NNI was its exclusive licensee. Since the parties lacked the authority to alter their legal relationships regarding the property of the bankruptcy estate without the bankruptcy court approval, the Acknowledgment should not be read in the strained way proposed by Elan.

defect and refile, should such action be necessary to ensure the assertion of a lost profits claim against Elan.[3]

---

[3] In the same refiled amended complaint, Plaintiffs would also address the Court's concerns regarding "NNO and NNI's allegations of continuing infringement of the '929 and '886 patents" in the Second Amended Complaint. (Op. at 6 n2.) As a result of the bankruptcy sale, plaintiffs are no longer asserting claims for continuing infringement and have limited their claims to infringement prior to October 3, 2007 when they were the owner and exclusive licensee. However, since the only complaint the Court authorized the plaintiffs to file was the one they submitted with the motion for leave to amend the complaint in 2006, plaintiffs had to file the approved complaint with some allegations that became outdated while the motion for leave was pending.

CONCLUSION

For the foregoing reasons and for the reasons set forth in the opening brief, the Court should reconsider, and reverse, its decision to dismiss NNI as a plaintiff in this action.

Dated:  New York, New York
       February 9, 2009

Respectfully submitted,

     /s/ Timur E. Slonim
Andrew D. Manitsky, Esq.
Megan Shafritz, Esq.
GRAVEL AND SHEA
76 St. Paul Street, 7th Floor
P.O. Box 369
Burlington, VT  05402-0369
(802) 658-0220

and

John M. Delehanty, Esq. (*Pro Hac Vice*)
Timur E. Slonim, Esq. *(Pro Hac Vice)*
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
666 Third Avenue
New York, New York  10017
(212) 935-3000

*For Plaintiffs*

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| NELLSON NORTHERN OPERATING, INC., )<br>and NELLSON NUTRACEUTICAL, INC. )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>ELAN NUTRITION, LLC, and )<br>ELAN NUTRITION, INC., )<br>)<br>Defendants. ) | Case No.  2:02-cv-0304 WKS<br><br>Hon.  William K.  Sessions, III<br>Chief Judge |

CERTIFICATE OF SERVICE

I, Timur E. Slonim, attorney for Plaintiff, certify that on February 9, 2009, I electronically filed with the Clerk of Court Plaintiffs' Motion To Reconsider With Incorporated Memorandum by using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

       Thomas Z. Carlson, Esq.
       Steven L. Underwood, Esq.

                                /s/ Timur E. Slonim
                              Timur E. Slonim, Esq.
                              MINTZ, LEVIN, COHN, FERRIS,
                                GLOVSKY AND POPEO, P.C.
                              666 Third Avenue
                              New York, New York  10017
                              (212) 935-3000

                              *For Plaintiffs*